————o————

No. 6023.

## WHITNEY CENTRAL TRUST & SAVINGS BANK vs. BYRNES REALTY COMPANY.

### Syllabus.

After contracting companies have paved a street in accordance with their contract, and after the paving has been accepted by the proper authorities, and certificates for the same have been issued, it is too late for property-owners to resist payment of the certificates upon any ground of irregularity in the giving of the contract, or of variance with the petition of the property-owners, or of change in the material used; all such objections should be made before the work is actually completed. · It would be against good conscience to allow property-holders to stand by and see contractors put down the paving without any objection on their part, and thus with their tacit consent, and after the completion of the paving, which they know they are expected to pay, to refuse to pay for the same upon grounds they might have urged before the contractors had acted.

The pavement is an improvement to the property which the owner cannot keep and not pay for, and thus enrich himself at the expense of another.

A street railroad company cannot be made to pay for paving along its tracks unless it has assumed the payment thereof.

Creditors are entitled to recover of their debtors the cost of recording the instrument securing their claims.

Appeal from the Civil District Court for the Parish of Orleans, Division "D," No. 92,268. Hon. Porter Parker, Judge.

Foster, Milling, Brian & Saal, for plaintiff and appellee.

F. R. Richardson and Wm. H. Byrnes, Jr., for defendants and appellants.

P. D. Olivier, attorney.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Plaintiff avers that the Southern Bitulithic Company made a contract with the City of New Orleans to pave Prytania Street from Clio Street to Jackson Avenue; that it did pave the street according to contract; and that certificates for said paving were issued to said company which were acquired by plaintiff; that at the time said contract was made the Byrnes Realty Company were owners of property fronting on said paved street, that the certificates issued against said property amounted to the sum of $2,753.12, but that the New Orleans Railway & Light Company has paid part of said certificates amounting to $505.08, and that the City of New Orleans has paid another part amounting to $557.55, leaving a

balance due of $1690.49, with 5% per annum interest from date of the certificates, and $6, cost of recording said certificates in the Mortgage Office, for which the plaintiff claims judgment.

The defendant pleaded a general denial, and the following special defenses:

1. That twenty-five per cent of the property holders fronting the paved portion of said street did not petition for the paving of said street.

2. That the petition called for the paving of said street with "Bitulithic" while said street was paved to the extent of almost one-half with "Belgian blocks," at an increased price of $2.15 per square yard, and was an unlawful variance which relieved defendant from the obligation of paying for it.

3. That Prytania Street is traversed by a double track of the New Orleans Railway & Light Company and that under its franchise said company is compelled to pay the cost of paving between its tracks, and on each side thereof, and that no part of the cost of said paving had been assessed against said railroad company, although the contract provides for payment for part of the cost by the company.

4. That it was stipulated in the paving contract that it should not go into effect until the decision of the Supreme Court in the case of **Gurley vs. The City of New Orleans**, and that if said case was decided against the city, then, and in that event the whole contract would be void, and that the above case was decided against the city.

There was judgment for the plaintiff as prayed for and the defendant appealed.

The first, second and fourth defenses can be disposed of together. They might have been used as a weapon to prevent the paving of the street, but cannot be used as a shield to exempt the defendant from payment of the paving after the same has been laid and used by defendant.

The rule has frequently been announcd that property-owners who, with knowledge of irregularities in the proceedings for public improvement to be paid for by special assessment, acquiesce in the construction of the improvements, and receive the consequent benefit to their property, are estopped to contest the validity of the assessment imposed.

> 25 Eng. & Am. Enc. of Law, 205; Bacas v. Adler, 112 La., 460; Rosetta Gravel Co. vs. Bisso, No. 1630 Court of Appeal; Same vs. Ivy, No. 2295 Ct. Appeal; Same v. Same, No. 3242 Court of Appeal.

A property owner who is sued on an assessment levied against his property for its **pro rata** share of the cost of municipal street paving is estopped from questioning the validity of the proceedings and the non-compliance on the part of the municipality's contractor with the specifications in its minutia when he stands by and sees the work being done and permits it to go on to completion without protest, and with the knowledge that he will be called upon to pay a **pro rata** cost of the work.

> Rosetta Gravel Co. vs. Ivy, No. 3242 Court of Appeal, June 12, 1903.

In the last case the defense was that the work done was executed and performed by the use and employment of a different character of gravel from that specified in the contract.

In the case of **Rosetta Gravel Co. vs. Bisso, No. 1630 Court of Appeal, June 28, 1901,** this Court said:

"A property owner who is sued on an assessment levied against his property for its **pro rata** share of the cost of municipal street paving is estopped from questioning the validity of the proceedings and the non-compliance on the part of the municipality's contractor and the specifications, in its minutia, when he stands by and sees the work being done and permits it to go on to completion without protest and with the knowledge that he will be called on to pay a **pro rata** cost of the work." Quoting:

> C. C., 1810, et seq.; 15 Peters, 107; 6 Otto, 720; 1 Wall, 274; 2 Herman on Estoppel S., 1221; Hennen's Dig. p. 512, Nos. 6 and 12; 65 Barbour; 1 Elliott on Roads, p. 418; 102 U. S., 76; 100 U. S., 580; 17 Wall, 8; 94 U. S., 432; 101 U. S., 633.

In **Daniel vs. City, 26 A., 1,** the defense was that the paving contract had geen given out without calling for bids as required by law, that the material was a patented improvement, and that the petition for the paving was not signed by one-fourth of the property owners. The Court said:

"The evidence shows the work was well done and that the price charged was reasonable. Under such a state of facts, it would be repugnant to every principle of law and equity to permit the plaintiffs to escape responsibility. They should not be permitted thus to enrich themselves at the expense of others."

> 5 U. S., 392; 2 A., 146; 12 A., 225; 2 R., 139; 4 A., 22.

In **Kelly vs. Chadwick, 104 La., 734,** the Court quoted approvingly **Cooley on Taxation, p. 468:**

"It is no defense to an assessment that the contract for the work was not performed according to

its terms. The proper authorities must decide upon this, and if they accept the work, this acceptance in the absence of fraud, is conclusive.''

In the case of the **Barber Asphalt Paving Co. vs. King, 130 La., 788,** the Supreme Court adopted an opinion of this Court which said:

"The attack on the ordinance upon which the paving claim is based on the grounds of irregularities in the enactment thereof and its variance with the terms proposed in the petition of the property holders, cannot be considered, for these are objections which should have been urged prior to the performance of the work.''

In the case of **Southern Bitulithic Co. vs. Algiers Ry., 130 La., 830,** the property holders petitioned for bitulithic pavement. The street was paved with this pavement with the exception of the space between the tracks of the defendant company which was paved with granite at an increased cost. The defendant company was bound by its franchise to pay for the paving between its tracks. It refused to pay for a more expensive kind of pavement than that used on the balance of the street. The Supreme Court said:

"The defendant company knew that this work was being done, indeed had its inspectors on it all the time. If the defendant company intended to refuse to pay for this more expensive kind of pavement, but intended to insist upon the other kind, it should have given formal notice to that effect to the city authorities before the work was done. This it did not do, and under familiar principles, is estopped now from so doing.''

To the same effect are: 51 A., 1353; 34 In., 140; 130 N. W., (Iowa) 127; 85 Mo. Appeals, 231; 90 N. Y. St., 250; 29 Ohio C. C. R., 633; 70 Atlantic, 100; 97 Pac., 1093; 25 Am. & Eng. Enc. of Law, 205; 47 Pac., 542; 28 Cyc., p. 1136, 1137, 1173.

In the case of **Tax Payers of Webster Parish vs. Police Jury**, 52 A., 465, the plaintiffs sued to set aside an election to levy a tax in aid of a railroad. The suit was filed before the construction of the road began.

In **Pleasants vs. City of Shreveport**, 110 La., 1046, the objections of the pavement had been made long before it was completed.

As regards the obligation of the city railroad company to pave between its tracks, the contract by virtue of which it exercises its franchise has not been filed in evidence. It has been agreed, however, that **Flynn's Digest of City Ordinances** shall be used in lieu of the contract. Defendant refers us to **Article 2204 (D), Flynn's Digest, p. 828.** But by Article 2199, on page 826 of the same book it will appear that this Article 2204 formed part of an absolute contract with the railroad which expired in January 1, 1906.

But by Articles 2275, 2276, pages 847, 848, the city provided by ordinance, for the sale of an extension of the railway franchises of the N. O. City & Lake Railroad for the period of fifty years from January 1, 1906, on conditions therein "changed and modified."

The "terms, conditions and specifications" begin at Article 2285, and by Article 2296, "The purchaser or his assigns shall, during the continuance of these franchises, keep in good order and repairs all streets through which these lines run between the rails and for one foot on each

side of said rails." We do not see there any obligation on the railroad to pave or repave between the tracks.

We are confirmed in the belief that no such obligation exists by the testimony of the City Engineer, by the opinion of the City Attorney, and by the decision of the Supreme Court in **42 A., 550.**

The judgment in favor of plaintiff was **in personam**, it should have been only **in rem.** This was evidently an oversight which would have been corrected if called to the attention of plaintiff or of the Court, which does not entitle defendants to costs of appeal on amendment of the judgment.

We think that plaintiffs are entitled to the cost of recording the certificates against the defendant. In the case of **Kent vs. Mejonier, 36 A., 259 (263),** the Supreme Court said:

> ".We think the plaintiff is entitled to the cost of registry of the two acts which were designed to secure his privilege on the machinery and the crop. Such costs are always paid by the obligor."

It is, therefore, ordered that with the provision that judgment herein shall be **in rem** and not **in personam** that it be affirmed with costs.

Judgment amended and affirmed.

Opinion and decree, April 6th, 1914.

Rehearing refused, May 4th, 1914.

Writ denied June 9th, 1914.