## No. 8050.

CITY OF NEW ORLEANS VS. NEW ORLEANS, ST. LOUIS AND CHICAGO RAILROAD CO.

Act 12 of 1875 conferring upon the State Board of Assessors the power of making the assessment for the city of New Orleans as well as the State, did not abolish distinctions established by existing laws between the subjects of taxation falling under the taxing power of city and the State respectively. Hence the assesment rolls for each were not necessarily counterparts and copies of each other, and the mere fact that they differed from each other, did not, of itself, invalidate either.

The law authorized the assessments under the head of "capital," all capital of corporations "not invested in real estate," and such assessment is not void for defective description because not setting out the particular items and objects in which the capital is invested. 32 Ann. 21; 31 Ann. 477.

Complaints of mere excessive valuation of taxable property in the assessment, cannot be listened to as a defense to a suit for the tax. If appeal on such questions be made to the courts, the action must be directed against the Board of Assessors.

The capital stock of defendant is not exempt from taxation under Act 42 of 1874.

APPEAL from the Fourth District Court for the Parish of Orleans. Houston, J.

*Blanc* and *Butler,* for Plaintiff and Appellee.

*L. E. Simonds,* for Defendant and Appellant:

I. Defendant's railroad runs through the States of Louisiana, Mississippi, Tennessee and Kentucky. As to its railroad, machinery, rolling stock, etc., in the three last-named States, and as to the operation of the same therein, defendant is a corporation of those States respectively, and is domiciled therein, and is, to that extent and in that respect, not a corporation of nor domiciled in Louisiana

II. So much of the property, real and personal, as has its *situs* in Mississippi, is in possession and control of the Mississippi corporation, and is taxable in that State only. The personal property, such as furniture, machinery, animals and rolling stock in that State, and which never passes beyond the limits of the State, has such *situs* and is taxable there only.

III. So, also, as to rolling stock which comes temporarily into this State, as vehicles of commerce, and which remain only a few hours in New Orleans, and which have their "home port" at the machine shops and "round houses" in Mississippi, and which are laid up there when not in use. Such property is not situated in this State, Its *situs* is elsewhere, and it is there taxable. Revenue Act. No. 42, of 1871, sec. 16. Rev. Stat. sec. 3254.

IV. The rule that personal property is assessable at the domicile of the owner, was intended to apply to property that follows or *may follow* the owner, *e. g.* debts, choses in action, etc. It was not intended to apply to personalty having an *established locality.* In Louisiana personal property is to be assessed in the parish where *situated.* Revenue Act of 1871, sec. 16; Revised Stat. art. 3254; See also Cooley Tax, 270.

V. The assessment in question is illegal and void. The Board of Assessors were required to make the *same assessments* for both State and city taxation. But the assessment roll for the city was of different property or at different valuations from the roll of the State. Act No. 12, of 1875, sec.

VI. There was no proper description of the thing assessed. The assessment of "*merchandise, capital and money at interest,*" is sought to be applied to railroad tracks and rolling stock—eked out by the testimony of the assessor and by other evidence outside of the assessment roll. It is not even claimed that any capital stock is assessed over and above the corporeal and tangible property of the Company.

VII. Defendant has the right to appeal to the courts against the *valuation* of the property as well as the legality of the tax. Just at the time of this assessment, there was no law making the decision of the assessors final as to the *city assessments.* Defendant opposes both the valuation and the legality of the tax.

VIII. Any law in this State which makes final the decision of the assessors fixing the *amount due* to the city, and which gives to such decision the force of the *thing ad-*

New Orleans vs. Railroad Company.

*judged,* is in violation of that part of the Constitution which lodges the judicial power in certain courts. Const. of 1868, art.

IX. The law as to "arbitration" of assessments, referred to by the judge below in his reasons for judgment, was not passed until *after* this assessment.

X. Neither the letter nor the spirit of the laws of Louisiana warrant an assessment of property not forming part of the bulk of property of the State. Without clear and positive legislation to that effect, the courts will not maintain an inequitable and capricious assessment. In the absence of provisions in the revenue act, under which the assessment is made, showing clearly the intent of the Legislature, the courts will look to other legislation on the same subject, to ascertain such intent.

The original opinion and decree in this case were, on rehearing, set aside.

## On Rehearing.

The opinion of the Court was delivered by

Fenner, J. Much reflection on the issues involved in this important case has brought us to the following conclusions, viz :

1. Act No. 12 of 1875, which devolved upon the State Board of Assessors the exclusive duty of making assessments for the city as well as the State, did not, in terms or by implication, abolish or repeal the distinctions established by existing tax laws between the subjects of taxation, falling under the taxing power of the State and of the city respectively. Thus act No. 7 of 1870 exempted from city taxation household goods to the value of one thousand dollars, and incomes not exceeding one thousand dollars per year, while Act No. 42 of 1871 exempted from taxation only five hundred dollars of household goods, and either exempts or taxes no income whatever. These laws the Board of Assessors were bound to respect. Hence the contention that, under Act No. 12 of 1875, there must be but one assessment for the city and State, and that the assessment roll of the one must be an exact copy and counterpart of the other, is without foundation.

In this particular case, the assessors seem to have construed their duty under the law, to be to assess for State taxation the entire capital of the corporation invested in the State, including eighty-eight miles of road-bed within the State limits, while, for city taxation, they assessed only the capital invested and employed in the city of New Orleans.

Under this view of the law, the assessments necessarily differed materially. In fact, the State assessment amounted to $4,000,000, while that for the city amounted only to $1,063,200.

Does the defendant contend that the assessment for the city should have conformed to that for the State ? If so, it complains with bad grace and without reason, because the non-conformity results to its

benefit in a saving of nearly $3,000,000 worth of property from taxation. Does it contend that the State assessment should have conformed to that for the city ? If so, it might furnish strong grounds for opposing the State assessment, but would be a confession of the correctness of that for the city. The mere fact that they differ cannot, of itself, furnish ground for contesting either.

It is proper to observe that the assessment under consideration was made in 1876 for the year 1877, and our remarks have no application to the system prevailing under the Constitution of 1879 and the legislation thereunder.

2. The objection that the assessment is void for lack of description of the property assessed is untenable.

The description consists in the word " capital." The law required no further description. It authorized the assessment under that head of all capital of a corporation "not invested in real estate," and did not require a description of the particular property in which it was invested. Act 42 of 1871, sections 34 and 35.

The legality of such assessments has been sustained by this Court, which said, in one case, "the assessment of the 'capital' of a corporation cannot in the nature of things, particularize each and every article and element of value entering therein. It must, of necessity, be assessed, to a great extent, in general terms, and so far as we can perceive, no distinction exists in law between corporations whose capital is all in money and those whose capital consists of property, privileges and franchises." N. O. and Carrollton R. R. Co. vs. Assessors, 32 Ann. 21; N. O. Gaslight Co. vs. Assessors, 31 Ann. 477.

Hence the objection of defective description is untenable.

3. The foregoing disposes of all objections which go to the inherent validity of the assessment as a basis for any taxation whatever.

The remaining objections only attack the amount of valuation and if sustained, would not destroy, but merely reduce the assessment of defendant's "capital." They are, in other words, complaints of exessive valuation. They raise several interesting and perplexing questions; but we are clearly of opinion that such questions cannot be agitated in this proceeding, which is a suit for a tax.

Sections 45 and 50 of Act 42 of 1871 and Act 12 of 1875 (which latter continued in the assessors "all powers heretofore prescribed by law") vested the power of correcting errors of assessment in the Board of Assessors, and provided, that, "they shall decide all contested cases and their decision shall be final as to the valuations in said assessment rolls."

It is contended, that this provision did not apply to assessments for the city, and, also that it is unconstitutional. We have no call to determine these questions now and here; for were we to assert the right of the tax-payer, injured in this regard, to claim judicial review of the action of the assessors, it is obvious that his action must be directed against the Board of Assessors, and that he cannot set up such injury as a defense to a suit for the tax by the city of New Orleans. The city did not make the assessment and had no power to correct it. The question is one exclusively between the tax-payer and the Board of Assessors whose action is called in question and whose decision is to be reviewed.

See Cooley on tax, p. 528 and note 4. No authority is needed to support so self-evident a proposition.

The mistake of the judge *a quo* in assigning, in his reasons for judgment, an erroneous reason for refusing to consider questions of excessive valuation, does not effect the correctness of his conclusion. As the grounds of this decision have now been passed on for the first time, we deem it proper to reserve the right of defendant to apply for a rehearing within the usual delay. Our former decree herein is, therefore, now annulled and set aside and it is now ordered that the judgment appealed from be affirmed.

### On Application for Rehearing.

Counsel for the cast defendant complains that we have not passed on one question raised by them, viz: " That its capital stock is exempt from taxation."

The claim rests on the provision of Section 2 of the charter of the New Orleans, Jackson and Great Northern Railroad Company, passed in 1853, in these words: " The capital stock of said corporation shall be exempt from taxation, and its works, fixtures, etc., shall be exempt from taxation for ten years after the completion of the road within this State." Considered *verbatim et punctuatim*, a strong argument might be made to exclude the exemption of the capital stock from the limitation of ten years; but the question would still remain doubtful and that alone would be sufficient to repel the claim under the doctrines announced in the Carrollton Railroad case. N. O. & Carrollton R. R. vs. New Orleans, 34 Ann. 429. See specially pp. 440, 441 and 447.

If this answer were not in itself sufficient, it might be readily shown that the Act 42 of 1874 did not, under any view, have effect to exempt the capital stock of the defendant corporation from taxation.

On other points, we will add that counsel do their own powers of lucid statement and our faculties of comprehension equal injustice in reproaching us with having "mistaken the grounds" upon which they claim the illegality of the assessment. We understood the grounds thoroughly, considered them carefully, and adhere to the conviction that we have disposed of them correctly.

We take pleasure in recognizing the thoroughness and ability with which they have presented their client's case, and they may rest content in the consciousness that they have done all that any counsel could have done in its behalf.

Rehearing refused.